IN THE UNITED STATES DISTRICT COURT
FOR WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| ALEXA MELVIN, | ) |
| *Plaintiff*, | ) ) ) |
| vs. | ) Case No.: ) |
| ENERSYS ENERGY PRODUCTS, INC.<br>Serve: CSC-Lawyers Incorporating<br>    Service Co.<br>    221 Bolivar Street<br>    Jefferson City, MO 65101 | ) ) ) ) ) ) ) |
| *Defendant*. | ) |

## **COMPLAINT**

Plaintiff Alexa Melvin ("Melvin"), for her Complaint against EnerSys Energy Products, Inc. ("EnerSys"), states as follows:

### **INTRODUCTION**

1. This is an action for damages and other relief on behalf of Alexa Melvin, a former Quality Assurance Engineer at EnerSys.

2. EnerSys is, among other things, a contractor for the U.S. Department of Defense ("DOD"), for whom it is contracted to manufacture critical components on Naval submarines.

3. During Melvin's employment with EnerSys, DOD and the Navy began investigating EnerSys for potential noncompliance with contract requirements regarding battery components intended for Navy submarine operations that may have posed a threat to U.S. national security interests and the safety of Naval personnel.

4. When Melvin learned of this investigation, she went outside of her chain of command to cooperate with investigators from the Defense Criminal Investigative Service ("DCIS") and Naval Criminal Investigative Service ("NCIS").

5. Shortly before Melvin's protected reports to DCIS and NCIS, she was given a "Commendable Performance" performance review. Shortly after her protected reports, Melvin was placed on a sham Performance Improvement Plan ("PIP"), had her access to workplace communications and computer accounts revoked, and was terminated in quick succession.

6. Melvin now brings this action to hold EnerSys accountable for its retaliatory termination of her employment.

## PARTIES, JURISDICTION, AND VENUE

7. Plaintiff is a resident of the State of Missouri. She is a former employee of Defendant EnerSys.

8. EnerSys is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in Warrensburg, MO. EnerSys can be served through its registered agent, CSC-Lawyers Incorporating Service Company, at 221 Bolivar St., Jefferson City, MO 65101.

9. Plaintiff's federal claims are brought pursuant to the False Claims Act, 31 U.S.C. §§ 3729 *et seq.*, and Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), 42 U.S.C.§§ 2000e *et seq.*. This Court has subject matter jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. § 1331.

10. This Court has supplemental subject matter jurisdiction over Plaintiff's claims arising under the Missouri Whistleblower Protection Act ("WPA"), R.S. Mo. § 285.575, pursuant

to 28 U.S.C. § 1367, because the facts underlying her Missouri WPA claim are so related to her claims under the False Claims Act that they form part of the same case or controversy.

11. This Court has personal jurisdiction over Defendant because its principal place of business is in Warrensburg, Missouri, and pursuant to 31 U.S.C. § 3732(a), which authorizes nationwide service of process and provides that an action under the False Claims Act "may be brought in any judicial district in which the defendant . . . can be found, resides, transacts business, or in which any act proscribed by section 3729 occurred."

12. Venue is proper pursuant to 28 U.S.C. § 1391 because Defendant conducts business in the Western District of Missouri, and the events giving rise to Plaintiff's claims occurred in this district.

## FACTUAL ALLEGATIONS

13. In September 2023, Plaintiff began working for Defendant as an SVRLA Quality Assurance Engineer II.

14. In that role, Melvin reported directly to Travis Scrutchfield.

15. Additionally, Melvin was a primary point of contact with the Defense Contract Management Agency ("DCMA"), an agency within the Department of Defense responsible for overseeing contract compliance.

16. Throughout her tenure with EnerSys, Melvin discovered a range of safety, compliance, and data falsification issues relating to defective battery parts intended for Navy submarines. These included falsified performance data, unauthorized database alterations, and resistance to implementing traceability safeguards.

17. Beginning around November 15, 2023, Plaintiff reported her concerns to Scrutchfield, her direct supervisor. She also went outside her chain of command to report to the

Senior Director of Quality, Carlos Estrada, and to the plant manager, with her concerns that EnerSys was out of compliance with its obligations under its DOD contracts.

18. In March and April 2024, Melvin began looking into an issue involving formation interruptions in cells, which could compromise product integrity. After pressing for internal answers but receiving no response, Melvin felt she had no choice but to talk to her contact at DCMA about the matter.

19. Melvin's DCMA contact put her in touch with a Naval engineer to help her better understand how to address the formation problems that were arising.

20. On or around April 22, 2024, Melvin learned that she had been reported to Enersys' Human Resources office for her report to DCMA.

21. Ultimately, Melvin's reports to DCMA made their way to investigators with DCIS and NCIS.

22. In June 2024, Jennifer Constine with DCIS and Sally Irvin with NCIS contacted Melvin to discuss their growing concerns about EnerSys' compliance with its government contracts.

23. Melvin agreed to share information with Constine and Irvin about EnerSys' ongoing issues with the batteries and its attempts to cover up the problems.

24. On June 26, Melvin reported to Constine that she believed EnerSys had falsified data for battery cells that the company was expecting her to submit to the government, and that she had refused to do so because she knew the data was fraudulent.

25. Melvin had previously discussed her view that the data was fraudulent with her supervisors at EnerSys, but they told her to submit everything to the Navy as is.

26. In August, Melvin's supervisors at EnerSys told her that they knew the batteries were nonconforming, but that she needed to "wordsmith" something so the Navy would accept them anyway. Melvin reported this conversation with her supervisors to DCMA.

27. In retaliation, Defendant subjected Plaintiff to escalating adverse actions.

28. Around August 23, 2024, Melvin learned that a coworker had overheard pieces of her conversations with DCMA and was reporting those conversations back to management.

29. A few days later, on August 28, Melvin was reprimanded for reporting to DCMA. She was told, incorrectly, that DCMA was a third-party outside the government that she should not be talking to.

30. The same day as her reprimand for reporting to DCMA, Melvin was placed on a Performance Improvement Plan ("PIP"). The PIP shocked Melvin, particularly given her recent "Commendable Performance" performance review before her protected reporting to DCMA, DCIS, and NCIS came to light.

31. On or around September 6, 2024, Melvin was locked out of her work computer accounts.

32. That same day, Melvin reported to Constine that EnerSys was still having problems with the line and with battery development that the company was not planning to share with the Navy.

33. Just a few days later, on September 12, Plaintiff's employment was terminated. She was told that the "business arrangement" was "no longer working."

34. In addition, Plaintiff was subjected to sex-based harassment and treated differently than male colleagues.

35. In January 2024, Plaintiff learned that a coworker made obscene, sexually explicit gestures mocking her during workplace conversations. Multiple colleagues confirmed this conduct and urged her to report it.

36. Plaintiff promptly reported the conduct to her supervisor and filed an anonymous ethics complaint when no action was taken.

37. Despite multiple witnesses, Defendant failed to investigate or remedy the behavior. A DCMA representative acknowledged Plaintiff appeared to be treated differently than her male peers.

38. Male employees who falsified data or submitted out-of-spec products were not disciplined, while Plaintiff was penalized and ultimately terminated after making protected complaints.

39. Plaintiff received no prior formal discipline before the retaliatory write-up in August 2024. She was recognized by internal and external stakeholders for strong performance.

40. Defendant's conduct was motivated by Plaintiff's protected whistleblowing and her gender, and violated both federal and state law.

41. ***Exhaustion of Administrative Remedies.*** On May 3, 2025, Melvin filed a Charge of Discrimination with the EEOC, alleging sex discrimination and retaliation.

42. On September 3, 2025, the EEOC issued Plaintiff a Notice of Right to Sue on her claims.

## COUNT I:
## RETALIATION UNDER THE FALSE CLAIMS ACT (31 U.S.C. § 3730(h))

43. Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

44. EnerSys' action in submitting falsified or fraudulent data to the Department of Defense in support of and in order to maintain its government contracts is a violation of the False

Claims Act, in that Defendant knowingly made, used, or caused to be used a false record or statement material to a false or fraudulent claim, 31 U.S.C. §§ 3729(a)(1)(B), or knowingly made, used, or caused to be made or used a false record material to an obligation to transmit property to the Government, 31 U.S.C. § 3729(a)(1)(G).

45. Plaintiff was an employee of EnerSys, and in her role with the company she was aware of Defendant's fraudulent conduct in violation of applicable laws, and/or had a reasonable belief that Defendant was engaged in fraudulent or unlawful conduct, as described more fully above.

46. Plaintiff engaged in lawful protected activity under the FCA by reporting potential fraud, falsified data, and safety violations affecting federal contracts both within the company to her plant manager and to Estrada, and when she reported outside the company to government agents at DCMA, DCIS, and NCIS.

47. Defendant knew of her protected activity and retaliated by disciplining and terminating her.

48. The timing and circumstances of the termination give rise to an inference that Plaintiff's employment was terminated in retaliation for reporting Defendant's violations of the False Claims Act to the government.

49. As a direct and proximate result of Defendant's actions, Plaintiff has been deprived of income and other monetary and non-monetary benefits.

50. As a further direct and proximate result of Defendant's actions, Plaintiff has suffered humiliation, emotional pain, distress, suffering, inconvenience, mental anguish, and related non-economic damages.

WHEREFORE, Plaintiff requests that the Court enter judgment in her favor and against Defendant EnerSys in the maximum amount allowed to her pursuant to 31 U.S.C. § 3730(h)(2), including reinstatement with the same seniority status Plaintiff would have but for the retaliation, two times the amount of her back pay, an amount fair and reasonable to compensate her for emotional distress, her reasonable attorneys' fees and costs incurred herein, for interest as allowed by law, and for such other and further legal and equitable relief as the Court deems just and proper.

## COUNT II:
## RETALIATION UNDER THE MISSOURI WHISTLEBLOWER PROTECTION ACT
## (Mo. Rev. Stat. § 285.575)

51. Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

52. Plaintiff is a protected person under the WPA, in that her reports both internally and to government agencies that Defendant was submitting falsified or fraudulent data constitute reports of unlawful acts and/or serious misconduct in violation of a clear mandate of public policy, as embodied in the False Claims Act.

53. Defendant retaliated by isolating Plaintiff, placing her on a PIP, and terminating her.

54. The timing and circumstances of Plaintiff's termination create a strong inference that it was motivated by her protected reports.

55. As a result of Defendant's unlawful retaliation, Plaintiff has suffered lost wages and benefits, such that she is entitled to an award of back pay.

56. Further, because Defendant's retaliatory conduct was done with an evil motive or with reckless indifference to Plaintiff's protected rights, Plaintiff is entitled to an award of liquidated damages equal to double her lost wages and benefits.

8

WHEREFORE, Plaintiff requests that the Court enter judgment in her favor and against Defendant EnerSys on Count II of her Complaint, and award her back pay, liquidated damages in an amount equal to double her back pay, her reasonable attorneys' fees and costs incurred herein, for interest as allowed by law, and for such other and further legal and equitable relief as the Court deems just and proper.

## COUNT III:
## SEX DISCRIMINATION (TITLE VII)

57. Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

58. Plaintiff is a former employee of Defendant EnerSys.

59. During her employment, Plaintiff was subjected to sex-based harassment and differential treatment, to the extent the differential treatment was even noticed by those outside the company.

60. Plaintiff was terminated for reporting her concerns about EnerSys' illegal activity, while male employees were not disciplined for more serious infractions, creating an inference that Plaintiff was terminated at least in part because of her sex in violation of Title VII.

61. As a result of Defendant's discriminatory conduct, Plaintiff has suffered lost wages and benefits, mental and emotional distress, humiliation, embarrassment, and frustration.

62. Furthermore, Defendant's discriminatory conduct was done with malice or reckless indifference to Plaintiff's protected rights, such that Plaintiff is entitled to an award of punitive damages.

WHEREFORE, Plaintiff requests that the Court enter judgment in her favor and against Defendant EnerSys on Count III of her Complaint, and award her lost wages, compensatory damages, punitive damages, her reasonable attorneys' fees and costs incurred herein, for interest

as allowed by law, and for such other and further legal and equitable relief as the Court deems just and proper.

## COUNT IV:
## SEX DISCRIMINATION (TITLE VII)

63. Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

64. Plaintiff is a former employee of Defendant EnerSys.

65. During her employment, Plaintiff was subjected to sex-based harassment and differential treatment, to the extent the differential treatment was even noticed by those outside the company.

66. When Plaintiff was subjected to sex-based harassment by a coworker in early 2024, at the encouragement of some other employees, Plaintiff reported the issue to her supervisor.

67. A few weeks later, after no action was taken, Plaintiff reported the matter to the company's ethics hotline.

68. Later in 2024, Plaintiff was terminated after reporting concerns about EnerSys' submission of false or fraudulent data to the government.

69. The timing and circumstances leading up to Plaintiff's termination, starting with her reports of sexual harassment, the company's inaction, and then her reports of unlawful activity, suggest that Plaintiff's protected activity, including her reports of sexual harassment, came to be viewed by Defendant as her being a "squeaky wheel" that needed to be removed.

70. As a result of Defendant's retaliatory conduct, Plaintiff has suffered lost wages and benefits, mental and emotional distress, humiliation, embarrassment, and frustration.

71. Furthermore, Defendant's retaliatory conduct was done with malice or reckless indifference to Plaintiff's protected rights, such that Plaintiff is entitled to an award of punitive damages.

WHEREFORE, Plaintiff requests that the Court enter judgment in her favor and against Defendant EnerSys on Count IV of her Complaint, and award her lost wages, compensatory damages, punitive damages, her reasonable attorneys' fees and costs incurred herein, for interest as allowed by law, and for such other and further legal and equitable relief as the Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff respectfully requests a trial by jury on all issues so triable.

## DESIGNATION OF PLACE OF TRIAL

Plaintiff hereby requests that the trial be held in Kansas City, Missouri.

## CIVIL COVER SHEET

Attached as **Exhibit A** is a copy of the Civil Cover Sheet.

**HKM EMPLOYMENT ATTORNEYS, LLP**

By: */s/ Kevin A. Todd*
John J. Ziegelmeyer III, MO 59042
jziegelmeyer@hkm.com
Brad K. Thoenen, MO 59778
bthoenen@hkm.com
Kevin A. Todd MO 73048
ktodd@hkm.com
1600 Genessee St., Suite 754
Kansas City, Missouri 64102
816.301.5430

ATTORNEYS FOR PLAINTIFF